UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CECELIA TRUGLIO, | : | |
| Plaintiff | : | No. 4:10-CV-2129 |
| vs. | : | (Complaint Filed 10/14/10) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | (Judge James M. Munley) |
| Defendant | : | |

MEMORANDUM AND ORDER

November 8, 2011

**BACKGROUND:**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Cecelia Truglio's("Truglio") claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below we will affirm the decision of the Commissioner.

Disability insurance benefits (DIB) are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Truglio meets the insured status requirements of the Social Security Act through December 31, 2012.  Tr. 18.[1]

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on December 22, 2010.

Truglio was born in the United States on March 15, 1954.[2]  Tr. 33.  Truglio has a high school education.  Tr. 27.  Truglio has no prior relevant employment.  Tr. 27.  Although, at the time of the hearing, and since 1997, she had been working 4-6 hours per week keeping house for someone.  Tr. 23. Records from the Social Security Administration reveal that Truglio had employment and earnings as follows:

| Year | Earnings |
|---|---|
| 1971 | $ 862.51 |
| 1972 | 1435.20 |
| 1973 | 2422.88 |
| 1974 | 1434.71 |
| 1975 | 558.00 |
| 1976 | 0.00 |
| 1977 | 2990.78 |
| 1978 | 10202.17 |
| 1979 | 2051.08 |
| 1980 | 7524.41 |
| 1981 | 7736.44 |
| 1982 | 5258.21 |
| 1983 | 1369.94 |
| 1984 | 3808.18 |
| 1985 | 1407.00 |
| 1986 | 5249.50 |
| 1987 | 640.00 |
| 1988 | 0.00 |
| 1989 | 0.00 |
| 1990 | 0.00 |
| 1991 | 0.00 |
| 1992 | 0.00 |
| 1993 | 0.00 |
| 1994 | 0.00 |
| 1995 | 0.00 |
| 1996 | 844.00 |
| 1997 | 1272.00 |
| 1998 | 1246.00 |
| 1999 | 1191.00 |

---

2. Truglio is presently 57 years old and considered of "advanced age" under the Social Security regulations.  The Social Security regulations state that those of advanced age are those 55 and over.  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(f).  When Truglio protectively filed for benefits on April 11, 2008, she was 54 "approaching advanced age," which is defined as individuals 50-54.  20 C.F.R., Part 404, Subpart P, Appendix 2, §201(g).  At her alleged onset date, on January 1, 2000, Truglio was 45 years old and she was considered a "younger individual" under the Social Security regulations.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

| | |
|---|---|
| 2000 | 459.00 |
| 2001 | 865.00 |
| 2002 | 1813.00 |
| 2003 | 3600.00 |
| 2004 | 3587.00 |
| 2005 | 3709.00 |
| 2006 | 3596.00 |
| 2007 | 3695.00 |
| 2008 | 3886.00 |
| 2009 | 0.00 |

Tr. 125.  Truglios's total earnings between 1971 and 2009 were $84,714.01.  Although Truglio has worked part-time since her alleged disability onset date, the work activity did not rise to the level of substantial gainful activity.  Tr. 20.

Truglio claims that she became disabled on January 1, 2000, because of lumbar disc disease, fibromyalgia, carpel tunnel syndrome and degenerative disc disease of the right shoulder.

On April 11, 2008, Truglio protectively filed an application for disability insurance and supplemental security income benefits. Tr. 116-124, 125-129. On July 15, 2008, the Bureau of Disability Determination denied Truglio's applications. Tr. 72-76, 77-81.[3] On August 19, 2008, Truglio requested a hearing before an administrative law judge. Tr. 82.  After approximately eleven months had passed, a hearing was held on July 30, 2009, before an administrative law judge. Tr. 69.  On August 18, 2009, the administrative law judge issued a decision denying Truglio's applications for benefits. Tr. 18-28.  On October 8, 2009, Truglio filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 10.  Twelve months later, on August 10, 2010, the Appeals Council concluded that there was no basis upon which to grant Truglio's request for review. Tr. 1-3.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

---

3. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for DIB and SSI benefits on behalf of the Social Security Administration.  Tr. 72-76, 77-81.

On October 14, 2010, Truglio filed a complaint in this court requesting that we reverse the decision of the Commissioner denying her disability insurance and supplemental security income benefits.

The Commissioner filed an answer to the complaint and a copy of the administrative record on December 22, 2010. Truglio filed her brief on February 4, 2011, and the Commissioner filed his brief on March 9, 2011. Truglio elected not to file a reply brief, thus the appeal[4] became ripe for disposition on March 28, 2011.

**STANDARD OF REVIEW:**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

---

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS:**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims.  See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[5] (2) has an impairment that is severe or a combination of impairments that is severe,[6] (3) has an impairment or combination of impairments

---

5. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

6. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember
(continued...)

that meets or equals the requirements of a listed impairment,[7] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[8]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION:**

At the first step of the sequential evaluation process the administrative law judge found that Truglio has not engaged in substantial gainful activity since the alleged onset date.[9]  Tr. 20.

At step two the administrative law judge found that Truglio has the following severe

---

(...continued)
simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

7. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

8. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

9. Although Truglio has been working part time as a housekeeper, the work activity did not rise to the level of substantial gainful activity.

impairments: "lumbar degenerative disc disease and fibromyalgia." Tr. 20.

At step three the administrative law judge found that Truglio's impairments did not individually, or in combination, meet or equal a listed impairment. Tr. 22.

The administrative law judge found at step four that Truglio has the residual functional capacity to perform the full range of medium work. Tr. 22.

At step five, the administrative law judge found that there are jobs that exist in significant numbers in the national economy that Truglio can perform. Tr. 27.

The administrative record in this case is 517 pages in length and we have thoroughly reviewed that record.

Truglio raises two issues on appeal. First, she argues that the administrative law judge erred in holding that Truglio 'was capable of performing a full range of medium work after finding that lumbar disc disease and fibromyalgia were severe impairments." (Doc. 6 at 10). Second, Truglio argues that the administrative law judge erred in holding that Truglio's "shoulder and carpal tunnel impairments were not severe." (Doc. 6 at 16).

The salient medical records are recited as follows:

On August 3, 2005, Truglio saw Susan Cowdery, M.D., a rheumatologist. Truglio had an initial evaluation for physical therapy. Tr. 271-272. Nerve conduction studies showed "mild to moderate demyelinating axonal right [and left] median nerve lesion at or about the wrist." Tr. 266. Dr. Cowdery started her on water therapy for her fibromyalgia and myofascial pain. Tr. 271-272. The physical therapist, Toby Bortner, P.T., assessed her "DTR were symmetrical." Tr. 266. "MMT was 5/5 of the bilateral upper extremities." Id. Mr. Bortner found: "1. Prolonged distal latency of the bilateral median sensory nerves; 2. Bilateral median thumb and ring differential values are consistent with Carpal Tunnel Syndrome; 3. Bilateral median motor nerve studies displayed prolonged distal latency with normal amplitude; 4. Left ulnar motor nerve displays slowing of conduction velocity across the elbow; 5. Right ulnar motor nerve study was

normal; 6.  Bilateral radial and ulnar sensory nerve studies were normal; 7.  Bilateral median and ulnar F-waves are normal." Tr. 266.

On September 2, 2005, Truglio was discharged from rehab/physical therapy after 11 treatments over four weeks.  Tr. 270.

On September 20, 2007, Truglio had an X-Ray of her right shoulder  "Indication: Persistent pain for several months." Tr. 363.  "There is suggestion of osteopenia, although this may reflect technique." Id.  "No fracture, dislocation, suspicious bony lesion or periarticular calcification is seen." Id.  "No significant joint narrowing is identified." Id.  "There is suggestion of slight elevation of the distal end of the clavicle." Id.  "This may be projectional." Id.  "Mild AC ligament sprain is not excluded." Id.  "Bony hypertrophy is seen inferiorly at the glenchumeral joint, with greater involvement of the humeral head." Id.  "Impression: 1.  Question osteopenia; 2.  Mild degenerative change at the glenchumeral joint; 3.  Questionable evidence of AC ligament sprain - please correlate clinically." Id.

On October 17, 2007, Truglio saw Raymond E. Dahl, D.O., an orthopedic surgeon.  He wrote that her "[r]ight upper extremity is nerovascularly intact with good sensation and good distal pulses."  Tr. 246 "She has full range of motion of the right shoulder." Id.  "She has  a positive impingement sign, a negative cross chest adduction test, a negative Speed's test, and a negative Yergason's test ." Id.   "She has no appreciable ligamentous laxity or instability."   Id.

On November 29, 2007, a MRI of Truglio's right shoulder showed "[N]o evidence of a rotator cuff tear." Tr. 249.  "There is evidence of tendinopathy " Id.

On December 10, 2007, Truglio had an initial evaluation for physical therapy with Kristy M. Scott, PT.  Her plan was for Truglio to attend physical therapy 2-3 times a week for 4 weeks "to emphasize right shoulder strengthening and active range of motion exercises as tolerated." Tr. 306.  Truglio presented to physical therapy for treatment of her "right shoulder anterior labral tear. " Tr. 278-280.  Ms. Scott wrote, "[t]he patient reported an insidious onset, but

complained of a dull ache 5/10 at its worst and currently 4/10 in the right shoulder." Tr. 302. "The patient stated she does nothing for the pain, but her symptoms increase when she drives, pulls up pillowcases, irons and has difficulty hooking and unhooking her bra." Id. "The patient stated she is unable to weight bear on the right shoulder or through the right elbow and received a cortisone shot two months ago, but stated that worsened her pain." Tr. 302-303. "AROM: Right shoulder flexion 100 degrees, abduction 95 degrees, internal rotation 35 degrees, external rotation 65 degrees. Tr. 303  "PROM: Right shoulder flexion within normal limitations, abduction within normal limitations, external rotation 75 degrees, internal rotation 48 degrees all with empty end feel." Id. "Strength: Right shoulder 4/5 within available range of motion." Id.  "Empty can test positive for supraspinatus involvement." Id. "Speed's test  negative." "Sulcus sign  is negative." Id. "Low and shift test  negative." Id.  "Apprehension test  is positive." Id. "Anterior slide test is positive." Id.  "Labral crank test  is positive." Id. "O'Brien compression test  is positive." Id. "Horizontal adduction test is positive." Id.

On January 31, 2008, Truglio saw Acharya Shubha, M.D., an internist.  He wrote that "she has paresthesias in bilateral hands which is chronic for her and she has carpal tunnel syndrome and that is not more than usual since the motor vehicle accident again she has been dropping objects from bilateral hands which is again not new for her." Tr. 479.

On February 18, 2008, Ms. Scott discharged Truglio from from physical therapy. Tr. 277 and 291.  Truglio's "right upper extremity [was] within normal limitation." Id.  The strength in her "right upper extremity [was] 5/5." Id. "The patient has made significant improvement with right shoulder active range of motion and strength." Tr. 291.

On April 2, 2008, someone (it is unclear from the records who) from the Wellspan Rheumatology Group told Truglio to  "[r]esume wrist splints."  Tr. 309.

On June 3, 2008, Stuart Pink, M.D., Truglio's cardiologist, completed a Medical Source Statement of Claimant's ability to Perform Work-Related Physical Activities.  He found no

limitations in any area listed by the form, these are: lifting, carrying, standing and walking, sitting, pushing and pulling, postural activities, other physical functions, and environmental restrictions. Tr. 229-231.

On June 6, 2008, Truglio went back to physical therapy. Ms. Scott wrote "[t]he patient presents to therapy with good postural mechanics and does not appear to have any guarding with movements of the right upper extremity." Tr. 299. "AROM: Right shoulder flexion within normal limitations, abduction within normal limitations, external rotation 75 degrees, internal rotation 48 degrees all with empty end feel." Id. "PROM: Right shoulder flexion within normal limitations, abduction within normal limitations, external rotation 75 degrees, internal rotation 48 degrees all with empty end feel." Id. "Strength: Right shoulder 4/5 within available range of motion." Id. "The patient has increased complaints of paresthesia to the right arm secondary to carpal tunnel." Id. "Empty can test positive for supraspinatus involvement." Id. "Speed's test negative." "Sulcus sign is negative." Id. "Low and shift test negative." Id. "Apprehension test is positive." Id. "Anterior slide test is positive." Id. "Labral crank test is positive." Id. "O'Brien compression test is positive." Id. "Horizontal adduction test is positive." Id.

On June 27, 2008, Jerry Brenner, D.O., a physician employed as a State agency medical consultant, completed a Physical Functional Residual Capacity Assessment Tr. 441-447 Based on a review of her records, Dr. Brenner found that she could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Tr. 442. He found that she could stand and/or walk for about 6 hours in an 8-hour work day and sit for about 6 hours. Id. He found no restrictions on her ability to push and/or pull. Id. He found that she could only occasionally climb, balance, stoop, kneel, crouch and crawl. Tr. 443. He found no manipulative, visual, communicative or environmental limitations. Tr. 443-444.

On September 25, 2008, Dr. Shubha wrote "[p]atient was seen in the office. . . to complete disability forms on the grounds of chronic fatigue and fibromyalgia." Tr. 494.

On May 18, 2009 Dr. Shubha wrote the following history as taken from Truglio: "Has also been followed by orthopedics for a right shoulder 'tear.'" Tr. 486. "Ortho injected the shoulder, she felt worse." Id. "Attended PT for her shoulder, didn't help." Id. "Now wants ortho to 'go in and fix it up'." Id.

Our review of the record shows that there is substantial evidence to support the administrative law judge's findings that Truglio is capable of performing medium work, and that Truglio's shoulder pain and carpal tunnel syndrome were not severe.

The administrative law judge undertook a thorough review of the record. This court's review of the record finds no evidence to support Truglio's contention that she is more limited than the administrative law judge found. Notably, Truglio's brief points to no evidence to support her contention that she is more limited than the administrative law judge found her to be. As the administrative law judge points out, "[a]llegations concerning symptoms and limitations are undermined by the relatively benign clinical and laboratory findings and the limited degree of treatment required." TR. 25. The administrative law judge went on to point out the conservative treatment, noting that "she has required no recent intensive/extensive treatment such as inpatient hospitalization, surgical intervention, partial hospitalization, or frequent/repeated emergency room visits." Moreover, the administrative law judge gave great weight to the opinions of Truglio's treating physicians. The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). The Court of Appeals stated in relevant part as follows:

> A cardinal principle guiding disability eligibility
> determinations is that the ALJ accord treating

> physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

Id. at 317-18 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). The administrative law judge explained that she gave only limited weight to the June 27, 2008 assessment of the State agency medical consultant because it was not based on an examination of Truglio, and it clearly overstated Truglio's limitations in relation to the medical record. Finally, the administrative law judge did not err in finding that Truglio's carpal tunnel and shoulder pain were not severe. Once again, plaintiff's brief points to no medical evidence to argue otherwise, and our own review of the record did not find any medical evidence to hold that the administrative law judge erred.

       The administrative law judge appropriately relied on the opinion of Dr. Pink, one of Truglio's treating physicians. An appropriate order will be entered.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CECELIA TRUGLIO,** | : | |
| | : | |
| Plaintiff | : | No. 4:10-CV-2129 |
| | : | |
| vs. | : | (Complaint Filed 10/14/10) |
| | : | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | : | (Judge James M. Munley) |
| | : | |
| Defendant | : | |

**ORDER**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of the Commissioner and against Cecelia Truglio as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Cecelia Truglio disability insurance benefits and social security income benefits is affirmed.

3. The Clerk of Court shall close this case.

s/ James M. Munley
James M. Munley
United States District Judge

Dated: November 9, 2011